IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JAMES J. DURHAM, | § | |
| | § | No. 270, 2015 |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | |
| v. | § | Court Below:  Superior Court |
| | § | of the State of Delaware |
| STATE OF DELAWARE, | § | |
| | § | Cr. ID No. 1003006262 |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted:  January 27, 2016
Decided:     February 8, 2016

Before **STRINE**, Chief Justice; **HOLLAND**, and **SEITZ**, Justices.

## **ORDER**

This 8th day of February, 2016, it appears to the Court that:

(1)    In March 2010, James Durham robbed Paul Message of his gambling winnings from the Dover Downs Casino.  The State's key witness was Durham's girlfriend, Shelva Smith.  The State granted Smith, an alleged accomplice to the crime, immunity from prosecution in exchange for her testimony that Durham robbed Message.  Durham's counsel did not request that the trial judge give the jury a special accomplice credibility instruction and did not object to the State's admission into evidence of the immunity agreement.  The jury found Durham

guilty of robbery and related crimes. This Court affirmed Durham's convictions on direct appeal.[1]

(2) Durham now appeals from the Superior Court's denial of his motion for postconviction relief. He argues that his Trial Counsel was ineffective for failing to object to the admission into evidence of Smith's immunity agreement and for failing to request a special accomplice credibility instruction. Durham also seeks plain error review of the trial court's failure to give *sua sponte* an accomplice credibility instruction. After a careful review of the record, we find that Durham did not suffer prejudice by counsel's alleged failures and his remaining claim is procedurally barred. Therefore we affirm the judgment of the Superior Court.

(3) Around 3:00 p.m. on March 8, 2010, Message decided to book a room at the Dover Downs Casino in Dover, Delaware. He was carrying a large amount of cash, mostly $100 bills, because he won $2,800 gambling. Message went to the parking lot to get his suitcase when Smith approached him. Smith offered to perform a "pole dance" for him in exchange for money. Message drove Smith to her apartment so that she could get her pole. While Message was waiting in the car for her, Smith's long-time boyfriend James Durham attacked and robbed Message.

(4) Smith was taken into custody the day after the robbery. She initially denied any knowledge of the crime. Later, she admitted that Durham robbed

---

[1] *Durham v. State*, 35 A.3d 418 (Del. 2012) (Table).

Message the day before but claimed it was without her knowledge or involvement. The State granted her immunity in exchange for her testimony. Smith testified at Durham's trial where she gave testimony consistent with her earlier statement. Smith was available for cross-examination. Smith's testimony was "critical" to the prosecution because the attacker was wearing a hooded sweatshirt that covered his face.[2] Smith later recanted her testimony at trial.

(5)     A jury convicted Durham of robbery first degree, conspiracy second degree, wearing a disguise during the commission of a felony, and assault third degree. Durham moved for a new trial on the basis of Smith's recantation. The court denied his motion, and sentenced him as a habitual offender to twenty-seven years at Level V incarceration followed by decreasing levels of supervision.

(6)     After this Court affirmed Durham's convictions on direct appeal, he filed a petition for postconviction relief in the Superior Court, alleging ineffective assistance of counsel. A Superior Court commissioner issued an order denying relief which the Superior Court affirmed.[3] This appeal followed.

(7)     We review the Superior Court's denial of a Rule 61 motion for postconviction relief for abuse of discretion.[4] We review questions of law *de*

---

[2] *State v. Durham*, 2011 WL 3568267, at *1 (Del. Super. June 9, 2011).
[3] *State v. Durham*, 2015 WL 2066778 (Del. Super. Apr. 30, 2015).
[4] *Neal v. State*, 80 A.3d 935, 941 (Del. 2013).

3

*novo.*[5] Durham first argues that the Superior Court committed plain error by failing to give *sua sponte* at trial a special accomplice credibility instruction. The argument is not well developed in Durham's brief. To the extent that Durham seeks review of an alleged trial court error, review is procedurally defaulted under Superior Court Criminal Rule 61(i)(3). Because the issue was not raised on direct appeal, under Rule 61(i)(3) Durham must show cause for relief from his procedural default and actual prejudice resulting from the failure to assert the claim.[6] Durham has offered no cause for relief from his procedural default. Further, as will be more fully addressed below, Durham cannot show prejudice from the failure to assert the claim.[7]

(8) Durham also argues that his counsel was ineffective for not requesting an accomplice credibility instruction and for not challenging on direct appeal the trial court's failure to give the instruction. Under *Strickland v. Washington*,[8] to demonstrate ineffective assistance of counsel, Durham must show: (1) that counsel's representation fell below an objective standard of reasonableness, and (2) prejudice.[9] To show prejudice, the defendant must show that it is reasonably likely

---

[5] *Brooks v. State*, 40 A.3d 346, 353 (Del. 2012).
[6] *See White v. State*, 994 A.2d 745 (Del. 2010) (Table).
[7] *Shelton v. State*, 744 A.2d 465, 475 (Del. 1999) ("Attorney error which falls short of ineffective assistance of counsel does not constitute cause for relief from a procedural default.").
[8] 466 U.S. 668, 687 (1984); *see also Zebroski v. State*, 822 A.2d 1038, 1043 (Del. 2003).
[9] *Brooks*, 40 A.3d at 354.

the outcome would have been different had counsel not committed the error.[10] To eliminate "the distorting effects of hindsight," there is a strong presumption that trial counsel's representation was professionally reasonable.[11] "[T]here is no need to examine whether an attorney performed deficiently if the deficiency did not prejudice the defendant."[12]

(9) In *Bland v. State*,[13] this Court suggested a model jury instruction for courts to give when an accomplice testifies against a defendant.[14] After years of confusion about whether the instruction was mandatory any time an accomplice testified, this Court decided *Brooks v. State*.[15] In *Brooks*, this Court announced a new rule requiring trial courts to provide a specific *Bland* instruction any time an accomplice testified. The new rule was not retroactive and "there would be no plain error where a trial judge provide[d] an instruction that 'correctly applied the law as it existed on the day [the trial judge] instructed the jury.'"[16] Because Durham's trial took place before *Brooks* was decided, he must demonstrate that his appellate counsel would have prevailed without the benefit of *Brooks*.[17]

---

[10] *Id.*
[11] *Hoskins v. State*, 102 A.3d 725, 730 (Del. 2014).
[12] *Ploof v. State*, 75 A.3d 811, 825 (Del. 2013).
[13] 263 A.2d 286, 289-90 (Del. 1970).
[14] *Hoskins*, 102 A.3d at 730-31.
[15] 40 A.3d 346 (Del. 2012).
[16] *Hoskins*, 102 A.3d at 732 (citing *Brooks*, 40 A.3d at 351).
[17] *Neal*, 80 A.3d at 948.

(10)　We need not decide whether counsels' performance was deficient because Durham cannot demonstrate he suffered prejudice. There was an abundance of circumstantial evidence presented at trial supporting his guilt. Prior to the robbery, a surveillance camera operator at Dover Downs tracked Durham's actions inside and outside the casino. Although Message could not identify the robber, Durham was "readily identified on the surveillance footage which was admitted into evidence."[18] The video showed Durham watching Message in the casino and following him as he left the building. It also showed Durham following Message out of the parking lot and traveling southbound on Route 13, just moments prior to the robbery.

(11)　Additionally, although Message could not identify the robber, he testified that after they arrived at the complex, Smith exited the vehicle and disappeared "within seconds."[19] The robbery occurred almost instantly. Message also remembered that the robber was a black male wearing a hooded shirt and trying his best to disguise himself.

(12)　Finally, Message testified that he won $2,800 playing blackjack in the form of $100 bills. A Dover police officer testified that Durham had thirteen $100

---

[18] App. to Answering Br. at 38-39 (Commissioner's Report).
[19] *Id*. at 39.

bills and one $50 bill when he was arrested the next day. When Smith was arrested, she had ten $100 bills and one $20 bill.

(13) The timing of the robbery, together with the surveillance footage, and the possession of the combined twenty three $100 bills by Smith and Durham, was strong circumstantial evidence implicating Durham in the robbery. Durham thus did not suffer prejudice, and the Superior Court did not abuse its discretion, in denying Durham's claim for post-conviction relief.

(14) Finally, Durham argues Trial Counsel was ineffective for not objecting to the admission of Smith's immunity agreement. Durham argues that the agreement impermissibly vouched for Smith's truthfulness as it emphasized that Smith would be subject to prosecution for perjury as well as the underlying offenses if her testimony was not truthful. Durham's argument fails for several reasons. First, the language of the immunity agreement is not objectionable because it was taken directly from the Delaware Immunity Statute.[20] The Delaware Immunity Statute provides that the State can penalize witnesses who fail to testify consistent with the conditions of their immunity agreements.[21]

---

[20] *Compare* App. to Opening Br. at 2 (Order of Immunity) *with* 11 *Del. C*. § 3506.
[21] 11 *Del. C*. § 3506.

7

(15)  Further, it was not error that the jury was told about the scope of Smith's immunity agreement with the State.[22]  In *Jenkins v. State*, a defendant argued that the grant of immunity to an accomplice who testified against him amounted to an impermissible comment on the evidence by the trial judge. According to the defendant, the grant of immunity to the accomplice "in effect told the jury that [the judge] believed that the defendant, rather than [the accomplice], was guilty."[23]  This Court held that a grant of immunity did not constitute impermissible comment upon the evidence.  Additionally, this Court held that any prejudice the defendant might have suffered was cured by a jury instruction stating the jury was the sole judge of the facts and had the option to find the defendant not guilty.

(16)  *Jenkins* is analogous to this case.  The jury, as the sole finder of fact, was not required to believe Smith's testimony simply because she entered into an immunity agreement with the State that required her to be truthful.  All witnesses swear to be truthful before testifying or face potential perjury charges.  Conversely, informing the jury of the terms of the agreement may have been beneficial, not harmful to Durham.  The terms, which included the grant of immunity, let the defense argue the potential bias or motives behind Smith's testimony.

---

[22] *See Jenkins v. State*, 305 A.2d 610, 614 (Del. 1973) (holding that an immunity agreement is not an impermissible comment on evidence).
[23] *Id.*

8

(17) Finally, as noted previously, Durham cannot prove he suffered prejudice given the overwhelming additional evidence of guilt. For these reasons, the Superior Court did not abuse its discretion when it denied Durham's motion for postconviction relief.

NOW, THEREFORE, IT IS HEREBY ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Justice